Joshua Konecky, SBN 182897
jkonecky@schneiderwallace.com
Leslie Joyner, SBN 262705
ljoyner@schneiderwallace.com
Nathan Piller, SBN 300569
npiller@schneiderwallace.com
SCHNEIDER WALLACE COTTRELL
KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Tel: (415) 421-7100
Fax: (415) 421-7105

Attorneys for Plaintiffs and the proposed Class

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK BODE, JASON ASHER, and MARTY COOK, on behalf of themselves and all others similarly situated,<br><br>       Plaintiffs,<br><br>vs.<br><br>C.R. ENGLAND, INC.<br><br>       Defendant, | Case No. _____<br><br>**CLASS ACTION COMPLAINT;**<br><br>**LAW ENFORCEMENT ACTION**<br><br>  **(1) CALIFORNIA LABOR CODE;**<br><br>  **(2) CALIFORNIA INDUSTRIAL WELFARE COMMISSION WAGE ORDERS; and**<br><br>  **(3) CALIFORNIA BUSINESS AND PROFESSIONS CODE §§17200, *et seq.***<br><br>**DEMAND FOR A JURY TRIAL** |

Plaintiffs, Mark Bode, Jason Asher, and Marty Cook, by and through their undersigned attorneys, hereby bring this Class Action Complaint on behalf of all others similarly situated, against Defendant C.R. England, Inc. ("Defendant" or "C.R. England" or "England"), and allege as follows:

## I.   INTRODUCTION

1.     This is a class action on behalf of Plaintiffs and other similarly situated individuals who have worked for Defendant C.R. England, Inc. ("Defendant" or "England") as non-exempt, over-the-road truck drivers in California.

2.     Plaintiffs bring this case to address Defendant's systemic denial of minimum wage and compliant meal and rest periods, among other violations of the California Labor Code, Industrial Welfare Commission ("IWC") wage orders, and Unfair Competition Law ("UCL"), arising from Defendant's policy of confining their truck drivers to the trucks' cramped "sleeper berths" for extended periods of time without pay or legally compliant meal and rest periods.

3.     C.R. England is a truckload motor shipping carrier that operates across the country. England has employed Plaintiffs and hundreds of other similarly situated employees in California as over-the-road truck drivers (collectively "Drivers" and/or "the Class").  The Drivers work away from home for weeks on end hauling freight in long-haul semis, either alone, or as part of a two-driver team.

4.     During their tours of duty transporting freight for Defendant, Drivers live on the truck and attempt to rest in the truck's cramped "sleeper berth," a small space equipped with a bunk bed in the truck's cab. The Drivers must remain on or near the truck throughout the day primarily for Defendant's benefit.   The Drivers also are subject to Defendant's control during this time. Nonetheless, Defendant does not compensate and/or fully compensate the Drivers for much of the time they are on, near and/or confined to the truck, including large swaths of time while the truck is in motion and the Drivers cannot even physically leave the work space without subjecting themselves to bodily injury and harm.

5.     The Drivers work day and night, transporting loads up to and often over a thousand miles. They spend weeks away from home as part of their regular job duties. To maximize productivity and profits, England works to keep the trucks moving as much as possible. The more England maximizes its drivers' work hours, the more loads its trucks can transport in a shorter amount of time. Not surprisingly, the Department of Transportation (DOT) has observed that over-the-road truck drivers like Defendant's "work some of the longest hours known in this country." *See* Notice of

1   Proposed Rulemaking; Request for Comments, Department of Transportation, Federal Motor Carrier

2   Safety Administration, Hours of Service of Drivers; Driver Rest and Sleep for Safe Operations, 2000

3   WL 517560, 65 FR 25540-01, at 25548.

4       6.      Plaintiffs Mark Bode and Jason Asher began their jobs with C.R. England working in

5   two-driver teams that collectively hauled freight for 20 or more hours a day over the course of several

6   weeks. During this time, they managed only a few hours of sleep per night in the truck's cramped

7   "sleeper berth," typically while the truck itself was in motion, being driven by a team member. At

8   various times during their employment, Bode, Asher, and Plaintiff Cook worked in a "solo" driver

9   capacity as well.  Both as "solo" drivers and in a "team" configuration, Plaintiffs worked around the

10  clock hauling freight, performing various non-driving tasks (such as trip inspections, washing the

11  trailer, taking the truck through weigh scales, working with delivery agents, fueling, and completing

12  paperwork, among numerous other tasks), and remaining responsible for the security of the load and

13  subject to Defendant's control even when the truck was stopped.  Between the 20 or more hours per

14  day spent driving, riding in a moving truck, performing non-driving tasks, and remaining under

15  Defendant's control while confined to the truck's sleeper berth, unable to use the time effectively for

16  their own purposes, the Plaintiffs and other similarly situated Drivers regularly worked more than 100

17  hours per week.

18      7.      Defendant's "sleeper berth" policies result in two categories of violations: (1) unpaid

19  wages for time during which Drivers are confined to the "sleeper berth," passenger seat, and the

20  immediate vicinity of the truck, while subject to the control of Defendant and unable to use the time

21  effectively for their own purposes; and (2) noncompliant meal and rest periods during time when

22  Drivers are confined to the "sleeper berth," passenger seat, and the immediate area surrounding the

23  truck, while subject to the control of Defendant.

24      8. Unpaid Sleeper Berth Time: Time during which employees are subject to the control of the

25  employer and are unable to use the time effectively for their own purposes is compensable under

26  California law. *Morillion v. Royal Packing Co.*, 22 Cal. 4th 575 (2000).  Indeed, "an employee who is

27  subject to an employer's control does not have to be working during that time to be compensated." *Id.*

28

at 582. For the reasons explained below and herein, the Drivers are subject to the control of C.R. England during the time they are confined to the truck's sleeper berth and are not free to use this time for their own purposes.

9. The DOT's safety regulations require drivers who have already been driving for 11 hours to log 10 consecutive hours as "off duty" and/or "sleeper berth" before driving again. By having the Drivers attempt to rest in the truck's cramped "sleeper berth" for their mandatory 10-hour non-driving periods, England can have the truck move as continuously as possible, while still complying with the DOT's "hours of service" safety regulations.

10. For example, many of Defendant's Drivers, including Plaintiffs, have worked in a "team" configuration whereby one team member drives while the other attempts to rest in the small "sleeper berth." By having the drivers switch off in the "team configuration," Defendant can have the truck move continuously, without stopping for 10 hours. In turn, the team configuration maximizes efficiency for Defendant by enabling it to meet the tight delivery deadlines it promises to its customers. Team Drivers are forced to attempt to rest in the truck's cramped sleeper berth while the truck is moving. The Drivers cannot, of course, get out and do what they want during this time; they are subject to Defendant's control and are in the sleeper berth for Defendant's benefit during such time.

11. When the Drivers work in a solo capacity, and stop the truck for their mandatory 10-hour non-driving periods, they are still confined to the immediate area of the truck, cannot use the time effectively for their own purposes, and are under Defendant's control during such time.

12. When in a team capacity, the common practice is for the truck to continue moving after one Driver reaches the 11-hour driving/on-duty limit. The other member of the team starts driving, while the original Driver remains in the sleeper berth and/or passenger, for the benefit of England's business objectives and without the ability to freely use the time for personal pursuits.

13. The Drivers also are responsible for the security of the loads they are transporting, even during these 10-hour non-driving periods. When the Drivers are able to stop the truck, they must remain near it to ensure security of the vehicle and the load they are carrying.

14. Even when Drivers are working in a solo capacity and therefore must stop the truck

after 11 hours of driving (rather than go to the sleeper berth while the team member takes over the driving), the places where Drivers may stop for their mandatory non-driving periods depend on where along the prescribed route they are at the time their driving hours expire. These locations are often remote and without access to showers, food, laundry, and other adequate facilities to fulfill their basic needs while out on the road. Drivers also are responsible for the security of the truck and the load during this time. Under these constraints, Drivers are unable to use the mandatory non-driving periods effectively for their own purposes. Thus, Drivers are subject to the control of England when in the sleeper berth, even when the truck is not in motion.

15.    Whether the truck is moving or stationary, the time the Drivers spend in the sleeper berth is subject to the control of C.R. England. It also is primarily for England's benefit because it lets Drivers resume hauling freight for England at the earliest possible time. This in turn allows the trucks to move as efficiently as possible and maximizes the amount of freight England can deliver to its customers in the shortest amount of time.

16.    <u>Noncompliant Meal and Rest Breaks</u>: Nor do the Drivers receive timely and compliant off-duty meal and rest periods, whether during the time they are in the sleeper berth, or all the other time they are out on the road, subject to the control of C.R. England.

17.    The Labor Code and applicable Wage Orders require that employers provide their employees with an off-duty meal period by the end of the fifth hour of work, and another by the end of the tenth hour of work, during which the employee is completely relieved of duty and not subject to interruption. However, Prime does not have policies and procedures to provide Drivers with compliant meal periods. Instead, Prime equates breaks to "off duty" as defined by the DOT, rather than applicable wage and hour law.  Thus, even when the Drivers are logged as "sleeper berth" for DOT safety purposes, they are not provided with an off-duty meal break because they still are under England's control. By definition, meal periods cannot be "off duty" or compliant, under California law, if the employee's movement is constrained, which it is while in the small sleeper berth, in a moving truck, and/or required to be near and responsible for the truck.

18.     Nor does C.R. England do anything to authorize and permit rest periods that are in compliance with the Labor Code and the Wage Orders. The Labor Code and wage orders require that employees be completely relieved of duty and not subject to interruption for at least ten minutes, for every four hours of work or major fraction thereof. Even if Drivers manage to take some kind of "break" from time to time, these "breaks" are not free from physical constraint while in the sleeper berth.

19.     Plaintiffs, on behalf of themselves and on behalf of all members of the Class, bring this action pursuant to Labor Code §§ 201-203, 226.2, 226.3, 226.7, 226.8, 400-410, 510, 512, 1182, 1174, 1194, 1197, and 1197.1; and California Code of Regulations, Title 8 §11090 §§ 7 & 11-12 (Wage Order No. 9). Plaintiffs challenge Defendants' policies of (1) failing to pay Plaintiffs and proposed Class members minimum wage; (2) denying Plaintiff and the Class full compensation for all hours worked; (3) failing to provide, authorize, permit and/or make available meal and rest periods to Plaintiff and the Class as required by California law; (4) failing to timely pay Plaintiffs and the Class full wages upon termination or resignation; and (5) failing to provide Plaintiff and the Class with accurate, itemized wage statements. Plaintiff seeks compensation, damages, penalties, and interest to the full extent permitted by the California Labor Code and the applicable IWC Wage Orders.

20.     Plaintiffs, on behalf of themselves and all others similarly situated, also bring this action pursuant to Business & Professions Code §§ 17200-17208, for unfair competition due to Defendants' unlawful violations of the Labor Code and IWC Wage Orders.  Plaintiffs, on behalf of themselves and all others similarly situated, seek declaratory and injunctive relief, including restitution under §17203.

21.     Plaintiffs, on behalf of themselves and all other aggrieved employees, also seek penalties under the Labor Code Private Attorneys General Act of 2004 (PAGA).  PAGA provides that any civil penalty assessed and collected by the Labor and Workforce Development Agency (LWDA) for violations of applicable provisions of the California Labor Code may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself and other current or former employees pursuant to procedures outlined in California Labor Code § 2699.3.

PAGA also provides that an aggrieved employee can bring a civil action on behalf of other aggrieved employees for violation of any other Labor Code provision that does not itself contain a civil penalty, in which case the civil penalties are assessed at $100 for each aggrieved employee per pay period for the initial violation and $200 for each aggrieved employee per pay period for each subsequent violation. On October 18, 2019, Plaintiff Asher provided written notice to the LWDA and by certified mail to Defendants of the specific provisions of the California Labor Code alleged to have been violated, including the facts and theories to support the alleged violations. The LWDA has not provided notice of its intent to investigate within 65 calendar days of Plaintiff's notice. Accordingly, Plaintiffs have satisfied the administrative prerequisites under California Labor Code Section 2699.3(a) to recover civil penalties against Defendants for violations of California Labor Code stated above.

22.     Plaintiffs seek compensation, damages, penalties, and interest to the full extent permitted by the California Labor Code and Industrial Welfare Commission Wage ("IWC") Wage Orders.

23.     Plaintiffs, on behalf of themselves and all others similarly situated, also requests reasonable attorneys' fees and costs pursuant to, inter alia, Labor Code §§ 225.5, 226, 226.7, 558, 1194, 1197, and 2699(g); and Code of Civil Procedure § 1021.5.

## II.     PARTIES

24.     Plaintiffs and proposed Class members are current and former employees of Defendant in California who worked as non-exempt Drivers during the time period four years before the filing of this complaint, through resolution of this action.

25.     Plaintiff Mark Bode is an individual over the age of eighteen, and is a resident of California, in Santa Cruz County. Plaintiff Bode was employed by C.R. England as a truck driver in various locations in California, including in this Judicial District, from approximately November 2017 to September 2018.

26.     Plaintiff Jason Asher is an individual over the age of eighteen, and is a resident of California. Plaintiff Asher was employed by Defendant as a truck driver in California from

approximately January 2019 to July 2019. Plaintiff Asher was paid a per-mile rate while working as a team truck driver for Defendant.

27.     Plaintiff Marty Cook is an individual over the age of eighteen, and is a resident of California. Plaintiff Cook was employed by Defendant as a truck driver in California from approximately May 2016 to February 2017. Plaintiff was paid a per-mile rate while working as a solo truck driver for Defendant.

28.     C.R. England, Inc. is a company that does business in the State of California and nationwide, and at all relevant times has been engaged in the business of long-haul trucking, logistics, and ground transportation in California and nationwide, including in this Judicial District. Defendant C.R. England, Inc. is headquartered and is a resident of Utah.

29.     Throughout this Complaint, any reference to "England" or "Defendant" or "C.R. England" is intended to refer to C.R. England, Inc.

30.     At all relevant times, Defendant has done business under the laws of California, has had places of business in California, and has employed Class members in this Judicial District. Defendant is a "person" as defined in Labor Code § 18 and Business and Professions Code § 17201. Defendant also is an "employer" as that term is used in the Labor Code and the IWC Orders regulating wages, hours, and working conditions.

### III.    JURISDICTION

31.     The Court has jurisdiction under 28 U.S.C. § 1332(a)(1), because the amount in controversy in this action exceeds $75,000, exclusive of interests and costs, and because the parties are residents of different states.

32.     The Court has jurisdiction over Defendant because it is a businesses authorized to do business in the State of California and is registered with the California Secretary of State. Defendant does sufficient business with sufficient minimum contacts in California, and/or otherwise intentionally avails itself of the California market through the advertising, marketing and sale of goods and services, to render the exercise of jurisdiction over Defendant by the California court consistent with traditional notions of fair play and substantial justice.

33.    Venue is proper under 28 U.S.C. §1391, because Defendant employs Class members and transacts business in this Judicial District, a substantial part of the acts and/or omissions giving rise to the claims occurred in this Judicial District, and Defendant has places of business in this Judicial District.

## IV.    FACTUAL ALLEGATIONS

34.    C.R. England is a transportation company and motor carrier operating thousands of trucks.

35.    C.R. England has employed Plaintiffs and hundreds of other over-the-road truck drivers in California. The Drivers work away from home for weeks on end driving long-haul trucks, either alone, or as part of a two-driver team. They spend their time hauling freight for C.R. England's customers and performing various non-driving tasks, including but not limited to: performing pre- and post-trip inspections, washing the trailer, fueling, bringing trucks through weigh scales, communications with dispatchers and customers, completing paperwork, and remaining in a standby capacity for freight transports to be made available, among other tasks.

36.    During their tours of duty transporting freight for Defendant, Drivers live on the truck and attempt to rest in the truck's cramped "sleeper berth." The sleeper berth is a small space with a bunk bed in the truck's cab.

37.    The Drivers work day and night, transporting loads up to and often over a thousand miles. They spend weeks away from home as part of their regular job duties. To maximize productivity and profits, Defendant works to keep the trucks moving as much as possible. The more Defendant maximizes its drivers' work hours, the more loads its trucks can transport in a shorter amount of time.

38.    Plaintiffs Mark Bode and Jason Asher worked in two-driver teams that collectively hauled freight for 20 or more hours a day over the course of several weeks at the beginning of their employment with C.R. England. They managed only a few hours of sleep per night in the truck's cramped "sleeper berth," typically while the truck was in motion and being driven by a team member. The sleeper berth of a moving truck was not an adequate place for Plaintiffs or the other Drivers to get at least 5 hours of uninterrupted sleep.

39.     As solo drivers, Plaintiffs Bode, Asher, and Cook also worked around the clock hauling freight, performing various non-driving tasks (such as trip inspections, bringing the truck through weigh scales, working with delivery agents, fueling, completing paperwork, remaining responsible for the security of the load while confined to the truck's sleeper berth, even when the truck was stopped, and remaining under England's control, among numerous other tasks). Between the 20 or more hours per day spent in some combination of driving; riding in the moving truck; performing non-driving tasks; and remaining under Prime's control while confined to the truck or immediate vicinity of the truck and unable to use the time effectively for their own purposes, the Plaintiffs and other similarly situated Drivers thus regularly work more than 100 hours per week. England does not pay the Drivers at their regular rate of pay or even at minimum wage for much of this time, when the Drivers are confined to a moving truck or the immediate vicinity surrounding it.

40.     Defendant's "sleeper berth" policies result in two categories of violations: (1) unpaid wages for time during which Drivers are confined to the "sleeper berth," passenger seat, and the immediate vicinity of the truck, while subject to the control of Defendant and unable to use the time effectively for their own purposes; and (2) noncompliant meal and rest periods during time when Drivers are confined to the "sleeper berth," passenger seat, and the immediate area surrounding the truck, while subject to the control of Defendant.

41.     Unpaid Sleeper Berth Time: The Drivers are subject to the control of Defendant during the time they are confined to the truck's sleeper berth and are not free to use this time for their own purposes. Moreover, by having the Drivers attempt to rest in the truck's cramped "sleeper berth" for their mandatory 10-hour non-driving periods, England can have the truck move as continuously as possible, while still complying with the DOT's "hours of service" safety regulations. (These regulations require Drivers who have already been driving for 11 hours to log 10 consecutive hours as "off duty" and/or "sleeper berth" before driving again.) However, while having the Drivers spend 10 consecutive hours in the sleeper berth or passenger seat of a moving truck may allow England to satisfy the DOT safety regulations, it does not afford the Drivers off-duty time in the sense of being unencumbered and freely able to use the time for personal pursuits.

42. Many of England's Drivers, including Plaintiffs Bode and Asher, have worked in a "team" configuration, whereby one team member drives while the other attempts to rest in the small "sleeper berth." By having the drivers switch off in the "team configuration," England can have the truck move continuously, without stopping for 10 hours. In turn, the team configuration maximizes efficiency for England by enabling it to meet the tight delivery deadlines it promises to its customers.

43. In the team configuration, one Driver must attempt to rest in the truck's passenger seat or cramped sleeper berth while the truck is moving. The Drivers generally cannot get at least five hours of uninterrupted sleep under these conditions. Nor can they leave the moving truck and do what they want during this time. Instead, the Drivers are subject to England's control and are in the sleeper berth for England's benefit during such time.

44. When the Drivers work in a solo capacity, and stop the truck for their mandatory 10 hour non-driving periods, they still must stay within the immediate area of the truck, and are under England's control during such time. To begin with, the Drivers are responsible for the load in the truck. Furthermore, the places where Drivers may stop for their non-driving periods are contingent on where they are at the time their driving hours expire. These locations are often remote and without access to food stores, laundry, showers, and other adequate facilities to fulfill the Drivers' basic needs on the road. Thus, Drivers are subject to the control of England when in the sleeper berth, even when the truck is not in motion.

45. Whether the truck is moving or stationary, the time the Drivers spend in the sleeper berth is subject to the control of England. It also is primarily for Defendant's benefit because it lets Drivers resume hauling freight for England at the earliest possible time. This in turn allows the trucks to move as efficiently as possible and maximizes the amount of freight England can deliver to its customers in the shortest amount of time. Yet, Prime does not pay the Drivers their regular rate of pay or even at minimum wage for this time.

46. <u>Noncompliant Meal and Rest Breaks</u>: Nor do the Drivers receive timely and compliant off-duty meal and rest periods, whether during the time they are in the sleeper berth, or all the other time they are out on the road, subject to the control of Defendant.

47.     England does not have policies and procedures in place to provide the Drivers with compliant meal periods during which they are completely removed from duty for at least 30 minutes by the end of the fifth and tenth hour of work. Even when the Drivers are logged as "off duty" or "sleeper berth" for DOT safety purposes, they are still are under England's control.

48.     Nor does England authorize and permit off duty and uninterrupted of at least 10 minutes for every four hours of work. Even if Drivers manage to take some kind of "break" from time to time, these "breaks" are not free from physical constraint while on a moving truck and/or constrained to the immediate vicinity of the truck.

## V.     CLASS ACTION ALLEGATIONS

49.     _Proposed Class Definition_. Plaintiffs bring Causes of Action One through Eight as a class action on behalf of themselves and all others similarly situated pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and/or (b)(3). Plaintiffs Bring the PAGA Cause of Action as a representative, law enforcement action, not as a class action.

50.     The Class that Plaintiffs seek to represent are composed of and defined as follows:

"All over-the-road truck drivers who have driven a truck for Defendant in California at any time beginning four years before the filing of this Complaint until the date of class notice, and spent any time logged as "sleeper berth" during such period." (the "Class")

51.     This action has been brought and may properly be maintained as a class action under Federal Rule of Civil Procedure 23:

   a.   _Numerosity_. Defendant has employed hundreds of Drivers in California from 2015 through the present. Class members are therefore far too numerous to be individually joined in this lawsuit.

   b.   _Existence and Predominance of Common Questions of Law and/or Fact_. Common questions of law and/or fact exist as to the members of the Class and, in addition, common questions of law and/or fact predominate over questions affecting only individual members of the Class. The common questions include the following:

i.   Whether Defendant has suffered and permitted the Drivers to work off-the-clock, without compensation;

ii.  Whether Plaintiffs are subject to Defendant's control during their 10 or more hour non-driving periods;

iii. Whether Plaintiffs are subject to Defendant's control during the time they must spend in the trucks' sleeper berths;

iv.  Whether Defendant owes the Drivers minimum wages;

v.   Whether Defendant owes the Drivers straight time wages;

vi.  Whether Defendant has denied the Drivers wages for work activities that are not compensated by their hourly rates;

vii. Whether Defendant has failed to provide the Drivers an opportunity to take off-duty meal periods as required by applicable law;

viii. Whether Defendant has failed to authorize and permit rest periods as required by applicable law;

ix.  Whether the paychecks provided to the Drivers in connection with their compensation contain all the elements mandated for accurate itemized wage statements under Cal. Labor Code § 226(a);

x.   Whether Drivers who had their employment relationship with Defendant terminated are entitled to penalty wages for Defendants' failure to timely pay all outstanding amounts of compensation owed upon termination of the employment relationship;

xi.  Whether Defendant's policies and practices have resulted in violation of one or more of the Labor Code Provisions cited herein;

xii. Whether Defendant's policies and practices are unlawful, unfair and/or fraudulent business practices in violation of California Business & Professions Code §§17200, et seq.;

   xiii. The injunctive and/or monetary relief to which Plaintiff and the Class may be entitled as a result of the violations alleged herein.

  c. _Typicality_. Plaintiffs' claims are typical of the claims of the Class. Defendant's common course of conduct in denying the Drivers compensation for time spent in the truck's sleeper berth and failing to provide compliant meal and rest periods has caused Plaintiffs and the proposed Class to sustain the same or similar injuries and damages. Plaintiffs' claims are thereby representative of and co-extensive with the claims of the proposed Class.

  d. _Adequacy_. Plaintiffs are adequate representatives of the Class because they are members of the Class and their interests do not conflict with the interests of the members of the Class they seek to represent. Plaintiffs have retained counsel competent and experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously. Plaintiffs and their counsel will fairly and adequately protect the interests of members of the Class.

  e. _Superiority_. The class action is superior to other available means for the fair and efficient adjudication of this dispute. The injury suffered by each member of the Class, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against Defendant economically feasible. Furthermore, individualized litigation increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court, and avoids the problem of inconsistent judgments.

  f. _Appropriateness of Injunctive or Declaratory Relief_. Final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole. Defendant has acted or refused to act on grounds that apply generally to the Class, such that final injunctive relief or corresponding declaratory relief may be properly applied to the Class as a whole.

**FIRST CAUSE OF ACTION**
**Failure to Pay for All Hours Worked in Violation of**
**California Labor Code §§201, 202, 204, and 221-223**

52.    Plaintiffs reallege and incorporate by reference the above paragraphs as though fully set forth below.

53.    California Labor Code §200 defines wages as "all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis or other method of calculation."

54.    California Labor Code §§ 201 and 202 require an employer to pay all wages earned but unpaid immediately upon the involuntary discharge of an employee or within seventy-two (72) hours of an employee's voluntary termination of employment.

55.    California Labor Code §204 provides that employers must compensate employees for all hours worked "twice during each calendar month, on days designated in advance by the employer as the regular paydays."

56.    California Labor Code §§221-223 prohibit employers from withholding and deducting wages, or otherwise artificially lowering the wage scale of an employee.

57.    As explained above, Defendant has maintained and continue to maintain a policy of denying the Drivers any compensation for time in the truck's cramped "sleeper berth," even though the Class members—including Plaintiffs Bode, Asher, and Cook—have been under Defendant's control while confined to the truck's sleeper berth or the immediate area surrounding it, for Defendant's benefit. Defendant also has failed to fully compensate Plaintiff and the other Class members for time spent performing tasks other than driving, including but not limited to fueling, paperwork, communicating with dispatch and customers, bringing the truck through weigh scales, waiting for loads to be made available, and coordinating with delivery agents (among other tasks), as well as for all for the extensive time they must spend in the truck's sleeper berth without pay.

58.    Defendant's unlawful compensation scheme has denied Plaintiffs and the Class the straight time wages to which they are entitled under the law. As explained above, Plaintiffs and members of the Class frequently have worked time for which they are not compensated at their regular

rates of pay, as determined by the Industrial Welfare Commission.

59.    Accordingly, Defendant has artificially reduced Plaintiffs' and its other Drivers' pay rates by denying them compensation for time spent on non-driving tasks and time during which they are under Defendant's control while in the sleeper berth of a moving truck, primarily for Defendant's benefit.

60.    As a proximate result of these violations, Defendant has damaged Plaintiffs and the Class in amounts to be determined according to proof at trial.

61.    Pursuant to Labor Code §218.6 and/or Civil Code §3287(a), Plaintiffs and other members of the Class are entitled to recover pre-judgment interest on wages earned, but not paid every pay period.

62.    Plaintiffs, on behalf of themselves and all others similarly situated, seek all unpaid compensation, damages, penalties, interest and attorneys' fees and costs, recoverable under applicable law set forth below.

### SECOND CAUSE OF ACTION
**Failure to Pay Minimum Wages**
**California Labor Code §§ 1182.11, 1182.12, 1194, 1197, and 1197.1; IWC Wage Order No. 9**

63.    Plaintiffs hereby reallege and incorporate by reference the allegations set forth above as if fully set forth herein.

64.    During the applicable statutory period, California Labor Code §§1182.11, 1182.12 and 1197, and the Minimum Wage Order were in full force and effect and required that the Class members receive the minimum wage for all hours worked at a rate not less than nine dollars ($9.00) per hour from July 1, 2014 to December 31, 2015; at a rate not less than ten dollars ($10.00) per hour from January 1, 2016 to December 31, 2016; at a rate of not less than ten dollars and fifty cents ($10.50) per hour from January 1, 2017 to December 31, 2017; and at a rate not less than eleven dollars ($11.00) per hour commencing on January 1, 2018.

65.    The Class members, including Plaintiffs Bode, Asher, and Cook, have regularly worked around the clock on multi-day trips away from home, hauling freight for England. They have worked tirelessly throughout the day and night to comply with England's policies and meet its expectations,

including to keep freight moving as constantly as possible and to meet the tight deadlines England has promised to its customers. As discussed above, Class members are not even able to go home for the night when on assignment for England; they have to attempt to sleep in the truck's sleeper berth, even when the truck is in motion and being driven by a co-driver.

66.     The Drivers are not paid at all—much less at the statutory minimum wage—for the extensive time they spend confined to the truck's cramped "sleeper berth," even though the Class members—including Plaintiffs Bode, Asher, and Cook—have been under Defendant's control while they wait in the truck's sleeper berth entirely for England's benefit. This time is compensable as a matter of law.

67.     Nor are they fully compensated for time spent performing other non-driving tasks.

68.     Defendant's unlawful compensation scheme has denied Plaintiffs and the Class the minimum wages to which they are entitled under the law. As explained above, Plaintiffs and members of the Class frequently have worked time for which they are not compensated even at the statutory minimum wage, as determined by the Industrial Welfare Commission.

69.     Labor Code §1194.2 provides that, in any action under §1194 to recover wages because of the payment of a wage less than minimum wage fixed by an order of the commission, an employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon.

70.     Pursuant to Labor Code §218.6 and/or Civil Code §3287(a), Plaintiff and other members of the Class are entitled to recover pre-judgment interest on wages earned, but not paid every pay period.

71.     As a direct and proximate result of the unlawful acts and/or omissions of Defendant, Plaintiffs and members of the Class have been deprived of minimum wages in an amount to be determined at trial, and are entitled to a recovery of such amount, plus liquidated damages, plus interest thereon, attorneys' fees, and costs of suit pursuant to Labor Code §§ 1194, 1194.2 and 1197.1.

/ / /

/ / /

**THIRD CAUSE OF ACTION**
**Failure to Provide Meal Periods, or Compensation in Lieu Thereof**
**California Labor Code §§ 226.7 and 512; and Cal.Code Regs., Title 8 §11090 ¶¶ 7 & 11**

72.    Plaintiffs hereby reallege and incorporate by reference the paragraphs above as though fully set forth herein.

73.    California Labor Code §§ 226.7 and 512, and Title 8 of the California Code of Regulations § 11090, ¶ 11 require Defendant to provide meal periods to Plaintiffs and members of the proposed Class.  California Labor Code §§ 226.7 and 512, and Title 8 of the California Code of Regulations § 11090, § 11 prohibit employers from employing an employee for more than five hours without a meal period no less than  thirty (30) minutes and for more than ten (10) hours without a second meal period.  Unless the employee is relieved of all duty during the thirty (30) minute period, the employee is considered "on-duty" and the meal or rest period is counted as time worked.

74.    Defendant has not provided Plaintiffs and the other Class members with meal periods during which they are completely relieved of duty for at least thirty (30) minutes by the fifth hour of work and again by the tenth hour of work.

75.    Rather, England merely has the Drivers abide by Department of Transportation (DOT) regulations, which require only a single 30 minute break after 8 hours of driving.  This policy is facially deficient under the Labor Code and Wage Order, which require that employers provide a meal period by the end of the fifth hour of work, and another by the end of the tenth hour of work. Defendant's policy also applies the DOT definition of "off duty," rather than the more protective definition under applicable wage and hour law. For example, Plaintiffs and other Class members go without any meal period during the time they are confined to the sleeper berth for ten or more hours at a time.

76.    Defendants' policy also is deficient in that England does not completely relieve the Drivers of any duty, and leaves them subject to interruption even during these 30 minutes of DOT-required non-driving time.  The Drivers are required to, and or subject to being called upon to perform various non-diving tasks during such time.

77.    Defendant has failed to perform their obligations to provide Plaintiffs and Class Members off-duty meal periods by the end of the fifth hour of work and a second meal period by the

end of the tenth hour of work.

78.     Defendant also has failed to pay Plaintiffs and Class Members one (1) hour of pay for each off-duty meal period that they have been denied. Defendant's conduct described herein violates California Labor Code §§226.7 and 512 and Title 8 of the California Code of Regulations §11090.

79.     Pursuant to Labor Code §218.6 or Civil Code §3287(a), Plaintiffs and other members of the Class are entitled to recover pre-judgment interest on wages earned, but not paid every pay period.

80.     Therefore, Plaintiffs and members of the putative Class are entitled to compensation for Defendant's failure to provide meal periods, plus interest, expenses, and costs of suit pursuant to California Labor Code §§226.7(b) and Title 8 of the California Code of Regulations §11090.

**FOURTH CAUSE OF ACTION**
**Failure to Provide Rest Periods, or Compensation in Lieu Thereof**
**California Labor Code §§ 226.7 and Cal.Code Regs., Title 8 § 11090 ¶ 12**

81.     Plaintiffs hereby reallege and incorporate by reference the paragraphs above as though fully set forth herein.

82.     California Labor Code §226.7 and Title 8 of the California Code of Regulations § 11090, ¶ 12 requires Defendant to authorize and permit paid, off-duty rest periods to Plaintiffs and members of the proposed Class at the rate of ten minutes net rest time per four hours or major fraction thereof.

83.     England does nothing to authorize and permit rest periods that are in compliance with the Labor Code and the Wage Order. England's only policy as to breaks of any kind is to have Drivers comply with the DOT regulations, which do not provide for breaks, aside from the 30-minutes of non-driving time after 8 hours of driving.

84.     Even if Drivers manage to take some kind of "break" from time to time, these "breaks" are not duty free or free from the possibility of interruption. Nor are they paid. The Drivers are required to, and/or subject to being required to perform non-diving tasks during such time.

85.     Under both California Labor Code § 226.7 and Title 8 of the California Code of

Regulations §11090, ¶ 12, an employer must pay an employee who was denied a required rest period one (1) hour of pay at the employee's regular rate of compensation for each workday that the employer did not provide the compliant, paid and off-duty rest period.

86.    At all relevant times herein, Defendant has failed to perform their obligations to authorize and permit Plaintiffs and Class Members to take rest periods as set forth above.

87.    Defendant also failed to pay Plaintiffs and Class Members one (1) hour of pay for each rest period they have been denied.  Defendant's conduct described herein violates California Labor Code §§ 226.7 and Title 8 of the California Code of Regulations §11090.

88.    Pursuant to Labor Code §218.6 or Civil Code §3287(a), Plaintiffs and other members of the Class are entitled to recover pre-judgment interest on wages earned, but not paid every pay period.

89.    Therefore, Plaintiffs and members of the putative Class are entitled to compensation for Defendant's failure to authorize and permit rest periods, plus interest, and costs of suit pursuant to California Labor Code §§ 226.7(b), and Title 8 of the California Code of Regulations § 11090.

### FIFTH CAUSE OF ACTION
**Failure to Keep Accurate Payroll Records**
**California Labor Code §§ 1174 & 1174.5**

90.    Plaintiffs hereby reallege and incorporates by reference the allegations set forth above as if fully set forth herein.

91.    California Labor Code §1174 requires Defendant to maintain payroll records showing the actual hours worked daily by Plaintiffs and the Class members.

92.    Defendant knowingly, intentionally, and willfully have failed to maintain payroll records showing the actual hours worked by Plaintiffs and the Class members as required by California Labor Code §1174 and in violation of §1174.5.  As a direct result of Defendant's failure to maintain payroll records, Plaintiffs and the Class members have suffered actual economic harm as they have been precluded from accurately monitoring the number of hours they have worked and thus seeking all accrued minimum wages and agreed upon wages.  As a direct and proximate result of the unlawful

acts and/or omissions of Defendant, Plaintiffs and the Class members are entitled to recover damages and civil penalties in an amount to be determined at trial, plus interest, attorneys' fees, and costs of suit.

**SIXTH CAUSE OF ACTION**
**Failure to Furnish Accurate Wage Statements**
**California Labor Code § 226**

93.    Plaintiffs hereby reallege and incorporate by reference the paragraphs above as though fully set forth herein.

94.    California Labor Code §226(a) provides that every employer must furnish each employee with an accurate itemized wage statement, in writing, showing nine pieces of information, including: 1) gross wages earned; 2) total hours worked by the employee; 3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece rate basis; 4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item; 5) net wages earned; 6) the inclusive dates of the period for which the employee is paid; 7) the name of the employee and the last four digits of his or her social security number or an employee identification number other than a social security number; 8) the name and address of the legal entity that is the employer; and 9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

95.    California Labor Code §226(e)(1) provides that an employee suffering an injury as a result of a knowing and intentional failure to provide a statement accurately itemizing the information set forth in Labor Code §226(a), then the employee is entitled to recover the greater of all actual damages or fifty-dollars ($50.00) for the initial violation and one-hundred dollars ($100.00) for each subsequent violation, up to a maximum of four-thousand dollars ($4,000.00).

96.    California Labor Code §226(e)(2) provides that an employee is deemed to suffer injury if the employer fails to provide wages statements that show, among other items, the amount of the gross wages or net wages paid to the employee during the pay period, the total hours worked by the employee during the pay period, all deductions, and all applicable hourly rates in effect during the pay period. Plaintiffs' and the Class members' wage statements do not comply with these requirements,

including because they do not show the accurate amount of gross or net wages and deductions, and do not show all applicable hourly rates. Accordingly, Plaintiffs and the Class members have suffered injury as a result of Defendant's violations of California Labor Code §226.

97.    Defendant intentionally and willfully failed to furnish Plaintiffs and Class members with timely, accurate, itemized statements showing total hours worked, gross wages earned, net wages earned, and the applicable hourly rates as required by California Labor Code §226(a).

98.    Plaintiffs and the Class members have been injured by Defendant's violation of California Labor Code §226(a) because they have been denied their legal right to receive and their protected interest in receiving, accurate, itemized wage statements, and could not promptly and easily ascertain from the wage statement alone their total hours worked, gross wages earned, net wages earned, and the applicable hourly rates, among other required information.

99.    Plaintiffs and Class Members have also been injured as a result of having to bring this action to obtain correct wage information following Defendant's refusal to comply with many requirements of the California Labor Code. As a result, Defendant is liable to Plaintiffs and Class members, for the amounts, penalties, attorneys' fees, and costs of suit provided by California Labor Code §226(e).

100.    Pursuant to Labor Code §218.6 and/or Civil Code §3287(a), Plaintiffs and other members of the Class are entitled to recover pre-judgment interest on wages earned, but not paid every pay period.

101.    Plaintiffs, on behalf of themselves and the proposed Class, request an assessment of penalties as stated herein and other relief as described below.

102.    Plaintiffs, on behalf of themselves and all others similarly situated, seek all unpaid compensation, damages, penalties, interest and attorneys' fees and costs, recoverable under applicable law set forth below.

/ / /

/ / /

/ / /

## VI.    SEVENTH CAUSE OF ACTION
### Waiting Time Penalties
### California Labor Code §§ 201-203

103.    Plaintiffs hereby reallege and incorporate by reference the allegations set forth above as if fully set forth herein.

104.    California Labor Code §201 requires an employer who discharges an employee to pay all compensation due and owing to said employee immediately upon discharge.  California Labor Code §202 requires an employer to promptly pay compensation due and owing to said employee within seventy-two (72) hours of that employee's termination of employment by resignation. California Labor Code §203 provides that if an employer willfully fails to pay compensation promptly upon discharge or resignation, as required under California Labor Code §§201-202, then the employer is liable for waiting time penalties in the form of continued compensation for up to thirty (30) work days.

105.    Plaintiffs Bode, Asher, and Cook, and members of the Class have left their employment with Defendant during the statutory period.  Defendant willfully failed and refused, and continues to willfully fail and refuse, to timely pay minimum wages, overtime compensation and sums wrongfully deducted from compensation to Plaintiffs and to all other proposed Class Members whose employment with Defendant have ended or been terminated at any point during the statutory period. As a result, Defendant is liable to Plaintiffs and other formerly employed members of the proposed Class for waiting time penalties, together with interest thereon, attorneys' fees, and costs of suit, under California Labor Code §203.

106.    Plaintiffs, on behalf of the proposed Class, request waiting time penalties pursuant to California Labor Code §203 and as described below.

### EIGHTH CAUSE OF ACTION
### Unfair Competition and Unlawful Business Practices

### VII.    California Business and Professions Code §§ 17200, et seq.

107.    Plaintiffs hereby reallege and incorporate by reference the allegations set forth above as if fully set forth herein.

108.    California Business and Professions Code §17200 defines unfair competition to include, "unlawful, unfair or fraudulent business practices."

109.    Plaintiffs and all proposed Class members are "persons" within the meaning of Business and Professions Code §17204, who have suffered injury in fact and have lost money or property as a result of Defendant's unfair competition.

110.    Defendant has been committing, and continues to commit, acts of unfair competition by engaging in the unlawful, unfair and fraudulent business practices and acts described in this Complaint, including, but not limited to:

      i.     violations of California Labor Code §§ 1197, 1197.1, 1198;

      ii.     violations of California Labor Code § 510;

      iii.     violations of California Labor Code §§ 226.7 and 512;

      iv.     violations of California Code Regulations, Title 8 § 11090 ¶¶ 7, 11, and 12;

      v.     violations of California Labor Code §§ 204, 221-223 and 400-410;

      vi.     violations of California Labor Code §§ 1174 and 1174.5;

      vii.     violations of California Labor Code §226; and

      viii.     violations of California Labor Code §§ 201-202.

111.    Plaintiffs reserve the right to identify additional unfair and unlawful practices by Defendant as further investigation and discovery warrants.

112.    As a result of its unlawful and/or unfair acts, Defendant has reaped and continues to reap unfair benefits and illegal profits at the expense of Plaintiffs and proposed Class members. Defendant's unlawful and/or unfair conduct has also enabled Defendant to gain an unfair competitive advantage over law-abiding employers and competitors.  Defendant must be enjoined from this activity and made to restore to Plaintiffs and proposed Class members their wrongfully withheld wages, interest thereon pursuant to Business and Professions Code § 17203.

113.    Business and Professions Code §17203 provides that the Court may restore to an aggrieved party any money or property acquired by means of unlawful and unfair business practices.

114.    Plaintiffs seek a court order requiring an audit and accounting of the payroll records to determine the amount of restitution of all unpaid wages owed to himself and members of the proposed Class, according to proof, as well as a determination of the amount of funds to be paid to current and former employees that can be identified and located pursuant to a court order and supervision.

115.    Plaintiffs, on behalf of themselves and the proposed Class, request restitution of unpaid wages, wage premiums, injunctive relief and other relief as described below.

### NINTH CAUSE OF ACTION
**Statutory Penalties Pursuant to PAGA (Labor Code §§2698, *et seq.*)**
**(On behalf of the State of California for All Aggrieved Employees)**

116.    Plaintiffs hereby reallege and incorporate by reference the allegations set forth above as if fully set forth herein.

117.    At all times herein set forth, the Private Attorneys General Act of 2004 (PAGA) applied to Defendants' employment of Plaintiffs and the proposed Class members.

118.    At all times herein set forth, the PAGA provided that any provision of law under the California Labor Code that provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency (LWDA) for violations of the California Labor Code may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself and other current or former employees pursuant to procedures outlined in California Labor Code § 2699.3.

119.    A civil action under PAGA may be brought by an "aggrieved employee," acting on behalf of the State of California. An aggrieved employee is any person that was employed by the alleged violator and against whom one or more of the alleged violations was committed.

120.    Plaintiffs have been employed by Defendants and the alleged violations were committed against them during their time of employment and they are, therefore, aggrieved employees. Plaintiffs and other employees are "aggrieved employees" as defined by California Labor Code §2699(c) in that they are all current or former employees of Defendants, and one or more of the alleged violations were committed against them.

121.    At all times herein set forth, the PAGA provided that for the violation of any Labor Code provision that does not itself contain a civil penalty, there are established civil penalties of $100 for each aggrieved employee per pay period for the initial violation and $200 for each aggrieved employee per pay period for each subsequent violation.  Cal. Lab. C. § 2699(f).

122.    Pursuant to California Labor Code section 2699.3, an aggrieved employee, such as Plaintiffs, may pursue a civil action arising under PAGA after the following requirements have been met:

    i.    The aggrieved employee must file written notice online with the LWDA and by certified mail to the employer of the specific provisions of the California Labor Code alleged to have been violated, including the facts and theories to support the alleged violations;

    ii.    The notice filed with the LWDA must be accompanied by a filing fee of seventy-five dollars ($75);

    iii.    The LWDA shall notify the employer and the aggrieved employee or representative by certified mail that it does not intend to investigate the alleged violations within sixty (60) calendar days of the postmark date of the notice received pursuant to paragraph (1). Upon receipt of that notice or if no notice is provided within sixty-five (65) calendar days of the postmark date of the notice given, the aggrieved employee may commence a civil action pursuant to Section 2699.

123.    On October 18, 2019, Plaintiff Asher provided written notice online to the LWDA and by certified mail to Defendants of the specific provisions of the California Labor Code alleged to have been violated, including the facts and theories to support the alleged violations.

124.    65 days have passed from Mr. Asher's notice, and the LWDA has not provided notice of its intent to investigate. Accordingly, Plaintiffs seek civil penalties against Defendants for violations of California Labor Code stated above, as authorized by the administrative prerequisites under California Labor Code Section 2699.3.

125.    Plaintiffs and the other aggrieved employees are entitled to and seek to recover civil

penalties for Defendants' violations of the Labor Code during the applicable limitations period in the following amounts:

iv.    For violations of California Labor Code Section 226.8(a), Fifteen Thousand Dollars ($15,000.00) for each of Defendants' violations in addition to any other penalties or fines permitted by law (penalty amounts established by California Labor Code § 226.8(b)) or for pattern and practice violations of California Labor Code Section 226.8(a), Twenty-Five Thousand Dollars ($25,000.00) for each of Defendants' violations in addition to any other penalties or fines permitted by law (penalty amounts established by California Labor Code § 226.8(c));

v.    For violations of California Labor Code Sections 200, 201, 202, 226.7, and 1198, one hundred dollars ($100.00) for each aggrieved employee per pay period for each initial violation and two hundred dollars ($200.00) for each aggrieved employee per pay period for each subsequent violation (penalty amounts established by California Labor Code § 2699(f)(2));

vi.    For violations of California Labor Code Section 1197, one hundred dollars ($100.00) for each aggrieved employee per pay period for each initial violation and two hundred dollars and fifty ($250.00) for each aggrieved employee per pay period for each subsequent violation regardless of whether the initial violation is intentionally committed (penalty amounts established by California Labor Code § 1197.1);

vii.    For violations of California Labor Code Sections 221 and 223 one hundred dollars ($100.00) for each aggrieved employee for each initial violation and two hundred dollars ($200.00) for each aggrieved employee for each subsequent or willful violation, plus 25 percent of the amount unlawfully withheld. (penalty amounts established by California Labor Code §225.5);

viii.    For violations of California Labor Code Section 510 and 512 and Wage Order No. 9 Sections 3, 9, 11, and 12, fifty dollars ($50.00) for each aggrieved employee for each initial violation for pay period for which the employee was underpaid and one hundred

dollars ($100.00) for each underpaid employee for each pay period for which the employee was underpaid (penalty amounts established by California Labor Code § 558);

ix.     For violations of California Labor Code Section 1174, five hundred dollars ($500.00) for each of Defendants' violations in addition to any other penalties or fines permitted by law (penalty amounts established by California Labor Code § 1174.5);

x.      For violations of California Labor Code Section 226, two hundred fifty dollars ($250.00) per employee for initial violation and one thousand dollars ($1,000.00) per employee for each subsequent violation (penalty amounts established by California Labor Code § 226.3); and

xi.     For violations of California Labor Code Section 558, fifty dollars ($50.00) for initial violation, fifty dollars ($50.00) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover unpaid wages; for each subsequent violation, one hundred dollars ($100.00) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages.

126.    Pursuant to California Labor Code Section 2699(g), Plaintiffs, on behalf of themselves and the other aggrieved employees, are entitled to an award of reasonable attorneys' fees and costs.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and the proposed Class they seek to represent in this action, request the following relief:

a.      That the Court determine that this action may be maintained as a class action under Federal Rule of Civil Procedure 23;

b.      For an order appointing Plaintiffs as representatives of the Class

c.      For an order appointing Plaintiffs' attorneys as Class Counsel;

d.      That the Court find that Defendant has been in violation of applicable provisions of the California Labor Code and IWC Wage Order No. 9 by failing to pay each member

of the proposed Class for all hours worked, including minimum wages and wages at the designated rate;

e.  That the Court find that Defendant have been in violation of California Labor Code §§226.7 and 512 by failing to provide Plaintiffs and members of the Class with meal periods and therefore owe compensation under California Labor Code §226.7(b) with respect to violations of California Code of Regulations, Title 8 §11090, ¶¶ 7 and 11;

f.  That the Court find that Defendant has been in violation of California Labor Code §§226.7 by failing to authorize and permit rest periods for Plaintiffs and members of the Class, and therefore owes compensation under California Labor Code §226.7(b) with respect to violations of California Code of Regulations, Title 8 §11090, ¶ 12;

g.  That the Court find that Defendant has violated the recordkeeping provisions of California Labor Code §§ 1174 and 1174.5 as to Plaintiffs and the Class;

h.  That the Court find that Defendant has been in violation of California Labor Code § 226 by failing to timely furnish Plaintiffs and members of the Class with itemized statements accurately showing the total hours worked, vacation benefits, bonus benefits, and wages earned by each of them during each pay period;

i.  That the Court find that Defendant has been in violation of California Labor Code §§201 and 202 and therefore owes waiting time penalties under California Labor Code §203 for willful failure to pay all compensation owed at the time of termination of employment to Plaintiffs and Class members;

j.  That the Court find that Defendant has committed unfair and unlawful business practices, in violation of California Business and Professions Code §17200, *et seq.*, by their violations of the Labor Code and Wage Orders as described above;

k.  That the Court order an accounting of the payroll records and/or driver logs to determine what restitution is owed and to whom, pursuant to California Business and Professions Code §17203;

l.  That the Court award to Plaintiffs and the proposed Class members compensation and

restitution for all wages owed, including minimum wages, wages at the designated
rate, for the value of all meal and rest periods that were not provided or authorized by
Defendant, and for all reasonable and necessary business expenses incurred by
Drivers;

m.    Prejudgment interest under Cal. Lab. C. § 218.6; Cal Civ. C. §§ 3287, 3289, and other
applicable law;

n.    That the Court award to Plaintiffs and the proposed Class members statutory and/or
civil penalties as provided herein, including but not limited to Labor Code §§ 203,
210, 226, 2699(a), and 2699(f);

o.    That Plaintiff and the Class be awarded reasonable attorneys' fees and costs pursuant
to Labor Code §§ 203, 225.5, 226, 1194, 1197, and 2699(g)(1); Code of Civil
Procedure § 1021.5, and/or other applicable law;

p.    Any and all other applicable statutory penalties, as provided by law; and

q.    For such other and further relief as this Court deems just and proper.

Respectfully submitted,

DATED:   March 5, 2020          **SCHNEIDER WALLACE COTTRELL**
**KONECKY LLP**

By: _____
        Leslie H. Joyner
        Attorneys for Plaintiff

1

## JURY DEMAND

2

Plaintiff demands a trial by jury on all issues so triable as a matter of right.

3

DATED:   March 5, 2020                **SCHNEIDER WALLACE COTTRELL**

4                                                    **KONECKY LLP**

5

6                                                    By: _____

7                                                          Leslie H. Joyner

8                                                          Attorneys for Plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28